Filed 2/16/23  P. v. Mantynen CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH MANTYNEN,<br><br>        Defendant and Appellant. | A164997<br><br>(Mendocino County<br> Super. Ct. No. SCUK-CRCR-17-92736) |

Defendant Joseph Mantynen was charged with murder under the provocative act doctrine.  In 2018, defendant pleaded guilty to voluntary manslaughter pursuant to a plea agreement.  In 2022, defendant petitioned for resentencing under former Penal Code section 1170.95 (as amended by Stats. 2021, ch. 551, § 2) (§ 1170.95).[1]  The trial court denied the petition on the ground defendant failed to make a prima facie case for relief.

On appeal, defendant contends the provocative act doctrine is no longer a valid theory of murder liability.  Alternatively, he claims a violation of equal protection.  We affirm.

---

[1] The Legislature has since renumbered Penal Code section 1170.95 as section 1172.6 without substantive change, effective June 30, 2022.  (Stats. 2022, ch. 58, § 10; *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2 (*Strong*).)  Further undesignated statutory references are to the Penal Code.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

*Underlying Murder Conviction*

Charges

In January 2018, the Mendocino County District Attorney filed an amended four-count complaint charging defendant with the murder of Mary Elizabeth Windham, also known as Mary Elizabeth Mantynen[2] (§ 187, subd. (a); count 1), assault with a firearm on a Mendocino County Sheriff's Deputy (count 2) and a Sonoma County Sheriff's Deputy (count 3), when defendant knew or should have known the victims were peace officers performing their duties (§ 245, subd. (d)(1)), and burglary in the first degree (§§ 459, 460, subd. (a); count 4).

The murder charge was expressly premised on the provocative act doctrine.[3] As to counts 1 through 3, it was further alleged that defendant personally used a firearm, to wit, a Remington .22 caliber rifle (§ 12022.53, subd. (b) (as to count 1); § 12022.5, subd (a) (as to counts 2 and 3)). In count 1, it was also alleged that a principal (presumably referring to Windham) was armed with a Marlin .410 shotgun (§ 12022, subd. (a)(1)).

Plea Agreement and Factual Basis for Plea

On March 1, 2018, the day before the scheduled preliminary hearing, the parties reached a negotiated disposition under which the murder charge was reduced to manslaughter, certain special allegations were dismissed, and defendant agreed to a prison term of 26 years, four months.

---

[2] The parties and trial court all describe the victim as defendant's wife.

[3] It was alleged defendant "did willfully and unlawfully, with deliberation, premeditation, and with malice aforethought, *through provocative act*, murder a human being . . . ." (Italics added.)

Because there was no preliminary hearing, the trial court asked the prosecutor to state the factual basis for the charges. In support of count 4, the prosecutor said that, on December 20, 2017, defendant and his accomplice Windham entered an inhabited dwelling in the town of Sonoma with the intent to commit larceny and did commit larceny.

The prosecutor continued, "The two of them then left Sonoma County and came into Mendocino County, eventually landing in Ukiah. The investigator for Sonoma County eventually located them at . . . the Sunrise Inn here in Ukiah, and law enforcement officials from Sonoma County . . . attempt[ed] to arrest these two at that hotel. [¶] The defendant originally committed an assault on Sonoma County Sheriff's Deputy Scott McKinnon with a firearm, knowing that he was a peace officer engaged in the performance of his duties. That was at the time viewed as a provocative act." This was the basis for count 3.

Count 2 "was a separate assault with a firearm, again with this defendant pointing a firearm at Mendocino County Sheriff's Deputy James Elmore, who the defendant knew or should have known was a peace officer acting in the performance of his duties. That was a second provocative act that caused the shot to be fired or shots to be fired which caused the death of Mary Elizabeth Windham."

As to the original murder charge, the prosecutor stated, "The People were proceeding under a provocative act theory of murder. We've accepted the defense offer of a voluntary manslaughter. We believe that the defendant's statements are such that the provocative act was intended and that this was a killing that was intentional, albeit by provocative act and law enforcement."

Defendant agreed to the factual statement by the prosecutor and entered a plea of guilty to voluntary manslaughter (§ 192, subd. (a)). He also admitted he personally used a firearm within the meaning of section 12022.5 and pleaded guilty to counts 2 through 4.

At sentencing, the trial court imposed the agreed-to term of 26 years and four months in state prison. Defendant submitted a letter to the court; although the letter is not part of the record on appeal, according to the descriptions by his counsel and the court, defendant described the killing as the result of a plan between himself and his wife, Windham, to kill themselves through "suicide by cop."[4]

*Petition For Resentencing*

On February 22, 2022, defendant filed a petition for resentencing under section 1170.95. The same month, the trial court issued an order appointing counsel for defendant and stating that it was "undertaking review of the record to ascertain if the petitioner meets the prima facie showing requirement of the statute," as outlined in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).

In a letter brief, defense counsel argued that resentencing under section 1170.95 was now available for provocative act murder because section 1170.95 had recently been amended to apply to any prosecution based on a "theory under which malice is imputed" based solely on "participation in a

---

[4] Defense counsel stated that defendant took "responsibility for his wife's death" and, "He possibly could have persuaded her not to go down this path of suicide by cop." The trial court described defendant's "heartfelt letter explaining how his otherwise normal and productive life in the space of a year devolved into a drug-fueled descent to the point where he and his wife actually made a plan to end their lives by entrapping law enforcement officers into shooting them . . . ."

crime," and malice may be implied or "imputed" in provocative act murder. (Italics omitted.)

At a hearing on April 11, 2022, the trial court ruled defendant failed to make a prima facie showing he qualified for relief under section 1170.95 and denied the petition. The court stated that defendant's argument conflated implied malice and imputed malice. The court explained, "[U]nder the provocative act murder doctrine, . . . the requisite state of mind is *not* imputed to the defendant. That's what happens in felony murder, and that's what happens in the natural and probable consequences doctrine, when in felony murder the intent to commit the enumerated felony is the mental state that's required. [But] with the provocative act doctrine, the defendant has to personally harbor a mental state of malice." (Italics added.)

## DISCUSSION

A.    *Changes to the Murder Statute and Petitioning for Resentencing*

At all relevant times, section 187 has defined murder as an unlawful killing with "malice aforethought" (§ 187, subd. (a)), and section 188 has provided that malice "may be express or implied" (former § 188, as amended by Stats. 1982, ch. 893, § 4; § 188, subd. (a)(2)).

In 2018, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) (S.B. 1437), which amended sections 188 and 189 to limit the scope of the felony-murder rule and to eliminate natural and probable consequence liability for second degree murder. (*Lewis, supra*, 11 Cal.5th at p. 957; *People v. Gentile* (2020) 10 Cal.5th 830, 839.) S.B. 1437 added subdivision (a)(3) to section 188, which now states in pertinent part, "Malice shall not be imputed to a person based solely on his or her participation in a crime."

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as

amended. [Citations.] Under newly enacted section 1172.6,[5] the process begins with the filing of a petition containing a declaration that all requirements for eligibility are met." (*Strong*, *supra*, 13 Cal.5th at p. 708.)

Under section 1172.6, subdivision (a), a "person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter" may file a petition to have that "conviction vacated and to be resentenced on any remaining counts when . . . the following [three] conditions apply." First, "[a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine"; second, "[t]he petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder"; and, third, "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(1)–(3).)

"When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' (§ 1172.6, subd. (c); [citation].) If the petition and record in the case

---

[5] As we have mentioned, section 1170.95 was renumbered 1172.6 without substantive change. We will discuss the current law, section 1172.6.

establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. (See § 1172.6, subd. (c); [citation].)" (*Strong*, *supra*, 13 Cal.5th at p. 708.)

B.  *Relief Under S.B. 1437 is Not Available for a Conviction Premised Solely on Provocative Act Murder*

Defendant contends the provocative act doctrine does not defeat a prima facie case for resentencing. We review de novo the denial of a petition for resentencing at the prima facie stage. (See *People v. Ervin* (2021) 72 Cal.App.5th 90, 101 [denial of a petition under section 1170.95 at the prima facie stage is a legal conclusion reviewed de novo].)

1.  The Provocative Act Doctrine

Our Supreme Court has described the provocative act doctrine as follows. "When someone other than the defendant or an accomplice kills during the commission or attempted commission of a crime, the defendant . . . may . . . be prosecuted for murder under the provocative act doctrine. . . . A variation on the law of transferred intent, the provocative act doctrine holds the perpetrator of a violent crime vicariously liable for the killing of an accomplice by a third party, usually the intended victim or a police officer. [Citations.] . . . Under the provocative act doctrine, when the perpetrator of a crime maliciously commits an act that is likely to result in death, and the victim kills in reasonable response to that act, the perpetrator is guilty of murder. [Citations.] 'In such a case, the killing is attributable, not merely to the commission of a felony, but to the intentional act of the defendant or his accomplice committed with conscious disregard for life.' [Citation.]

"A murder conviction under the provocative act doctrine thus requires proof that the defendant personally harbored the mental state of malice, and either the defendant or an accomplice intentionally committed a provocative act that proximately caused an unlawful killing. [Citations.] A provocative

7

act is one that goes beyond what is necessary to accomplish an underlying crime and is dangerous to human life because it is highly probable to provoke a deadly response. [Citations.] Although the doctrine has often been invoked in cases where the defendant initiates or participates in a gun battle [citation], it is not limited to this factual scenario. [Citations.] Malice will be implied if the defendant commits a provocative act knowing that this conduct endangers human life and acts with conscious disregard of the danger." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 654–655 (*Gonzalez*).)

2.  Provocative Act Murder Remains a Valid Theory of Liability

Murder under the provocative act doctrine requires proof that "the defendant *personally harbored* the mental state of *malice*," which "will be *implied* if the defendant commits a provocative act knowing that this conduct endangers human life and acts with conscious disregard of the danger." (*Gonzalez*, *supra*, 54 Cal.4th at p. 655, italics added.) S.B. 1437 changed the law of murder by generally prohibiting "imputed" malice "based solely on [a person's] participation in a crime." (§ 188, subd. (a)(3).) But implied malice murder still exists. (§ 188, subd. (a) ["malice may be express or implied"].) Provocative act murder, which requires malice, remains a valid theory of murder liability.

Defendant contends he made a prima facie case for resentencing because he "could not now be convicted of murder under the provocative act doctrine because it imputes malice as prohibited by section 188." Defendant acknowledges courts have uniformly rejected this argument. (See *People v. Mancilla* (2021) 67 Cal.App.5th 854, 867 (*Mancilla*) [collecting cases]; *People v. Swanson* (2020) 57 Cal.App.5th 604, 612–617 (*Swanson*) [rejecting arguments that provocative act murder is a subset of the natural and probable consequences doctrine and that first-degree provocative act murder

falls within the old felony-murder rule][6]; *People v. Johnson* (2020) 57
Cal.App.5th 257, 266–270 (*Johnson*) [rejecting argument that defendants
convicted under the provocative act doctrine were entitled to resentencing
under the "natural and probable consequences" provision of section 1170.95,
subdivision (a)(3)]; and *People v. Lee* (2020) 49 Cal.App.5th 254, 266 (*Lee*)
[rejecting argument that the provocative act murder in the petitioner's case
was " 'a combination of felony murder and natural and probable consequence
murder' "].)[7]

In *Lee*, the court explained that, prior to S.B. 1437, "the felony murder
rule and the natural and probable consequences doctrine provided theories
under which a defendant could be found guilty of murder *without proof of
malice*." (*Lee, supra*, 49 Cal.App.5th at p. 260, italics added.) But "[u]nlike
felony murder or murder under the natural and probable consequences
doctrine, '[a] murder conviction under the provocative act doctrine . . .
requires proof that the defendant personally harbored the mental state of

---

[6] The California Supreme Court granted review in *Swanson*, but in
November 2021, it dismissed and remanded the matter, specifying that the
Court of Appeal opinion was "non-citable and nonprecedential 'to the extent it
is inconsistent with' [the high court's] decision in *Lewis*," *supra*, 11 Cal.5th
952. (*People v. Swanson* (S266262, Nov. 23, 2021) [286 Cal.Rptr.3d 704].) In
*Lewis*, the Supreme Court held (1) a petitioner is entitled to appointment of
counsel upon the filing of a facially sufficient petition and (2) the trial court
may consider the record of conviction in determining whether the petitioner
has made a prima facie showing that he or she is entitled to relief. (*Lewis,
supra*, 11 Cal.5th at p. 957.) We do not cite *Swanson* for any proposition
inconsistent with *Lewis*.

[7] As with *Swanson*, the California Supreme Court granted review in
*Lee* but later dismissed and remanded the matter, specifying that the Court
of Appeal opinion was "non-citable and nonprecedential 'to the extent it is
inconsistent with' [the high court's] decision in *Lewis*," *supra*, 11 Cal.5th 952.
(*People v. Lee* (S262459, Nov. 23, 2021) [286 Cal.Rptr.3d 703].) We do not cite
*Lee* for any proposition inconsistent with *Lewis*.

malice . . . ." (*Id.* at p. 264.)  Thus, a petitioner convicted of provocative act murder could not make a prima facie case for relief under S.B. 1437 because he could not "show that he 'could not be convicted of first or second degree murder because of changes to Section 188 or 189' as required for relief under section 1170.95, subdivision (a)(3).  Section 188, as amended, establishes that 'in order to be convicted of murder, a principal in a crime shall act with malice aforethought.'  Because [the petitioner] was convicted of provocative act murder, the jury necessarily found he acted with malice aforethought." (*Id.* at p. 265.)

Similarly, in *Johnson*, the court distinguished provocative act murder from felony murder and liability under the natural and probable consequences doctrine on the ground that provocative act murder requires that the defendant personally harbor malice while the " ' "felony-murder rule generally acts as a *substitute* for the mental state ordinarily required for the offense of murder" ' " and the natural and probable consequences doctrine " 'allows an aider and abettor to be convicted of murder, *without malice.*' " (*Johnson*, *supra*, 57 Cal.App.5th at p. 271 and fn. 4, italics added and original italics deleted.)

Defendant argues the cases that have rejected his argument failed to acknowledge that "implied malice is in essence imputed to the defendant based on his participation in some other crime or as the natural and probable consequence of his act."  But the provocative act doctrine does not impute malice based on participation in a crime.  Rather, malice is implied (not imputed) under the provocative act doctrine when a defendant engages in

10

conduct "knowing that this conduct endangers human life and acts with conscious disregard of the danger."[8] (*Gonzalez, supra,* 54 Cal.4th at p. 655.)

Nor does the provocative act doctrine impute malice as the natural and probable consequence of a person's act. " '[M]urder includes both actus reus and mens rea elements. To satisfy the actus reus element of murder, the act of either the defendant or an accomplice must be the proximate cause of death.' Consideration of the natural and probable consequence of the defendant's conduct in the context of provocative [act] murder, as with any case of implied malice murder, relates to proximate cause—that is to the actus reus element of the crime, not the mens rea element that was the focus of Senate Bill 1437." (*Mancilla, supra,* 67 Cal.App.5th at p. 868, italics omitted, fn. omitted.) As the court explained in *Swanson,* "[I]n any provocative act case, where by definition an intermediary's act killed the victim, an important question will be whether the defendant's conduct proximately caused the death," but "analysis of proximate cause in terms of foreseeability of the natural and probable consequences of the defendant's malicious conduct does not somehow bring a provocative act killing within

---

[8] " 'A finding of implied malice depends upon a determination that the defendant *actually appreciated* the risk involved, i.e., a subjective standard.' [Citation.] Since rarely would a defendant provide direct evidence of that, 'implied malice may be proven by circumstantial evidence.' [Citation.] 'The very nature of implied malice . . . invites consideration of the circumstances preceding the fatal act.' " (*People v. Superior Court of San Diego County* (2021) 73 Cal.App.5th 485, 502.) In other words, implied malice may be inferred from conduct and surrounding circumstances, but this does not mean a person can be convicted of provocative act murder based on a finding that the person committed a crime alone. Implied malice requires the additional determination that the person acted with conscious disregard of danger to human life.

the malice-free natural and probable consequences doctrine." (*Swanson, supra,* 57 Cal.App.5th at p. 614.)

In short, defendant cannot make a prima facie case for relief because provocative act murder is not a "theory under which malice is imputed to a person based solely on that person's participation in a crime" (§ 1172.6, subd. (a)), and S.B. 1437's changes to section 188 do not preclude a murder conviction under the provocative act doctrine.

C.    *There is No Equal Protection Violation*

Next, defendant argues S.B. 1437 violates equal protection by treating persons convicted under the provocative act doctrine differently from those convicted of murder under the natural and probable consequences doctrine. He argues these two groups are similarly situated as "persons who were non-killers, who did not intend to kill, who were convicted of murder under a theory of imputed malice."

This argument was rejected in *Mancilla.* There, the court reasoned: " 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' . . . [W]e ask at the threshold whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws.' [Citations.] If the two groups are not similarly situated, there can be no equal protection violation.

"Contending individuals convicted of murder under the natural and probable consequences doctrine and those convicted of provocative act murder are similarly situated in terms of their culpability for murder—both groups, [petitioner Mancilla] insists, involve defendants who were not the actual

12

killers, who did not intend to kill the victim and who were convicted under a theory of imputed malice—Mancilla argues the Legislature did not have a constitutionally sufficient reason to exclude provocative act murder from the scope of Senate Bill 1437 whether evaluated under either strict scrutiny or rational basis review. The premise for Mancilla's equal protection argument is false.

"As discussed, the People must prove a defendant personally acted with implied malice to be convicted of provocative act murder. In contrast, murder under the natural and probable consequences doctrine required no proof of malice. [Citation.] Given the express intent of Senate Bill 1437 'to more equitably sentence offenders in accordance with their involvement in homicides' (Stats. 2018, ch. 1015, § l, subd. (b); [citation]), offenders who acted with malice and those who did not are not similarly situated for purposes of section 1170.95." (*Mancilla*, *supra*, 67 Cal.App.5th at pp. 869–870, fn. omitted.)

Likewise, in *Johnson*, the court rejected the same equal protection claim, explaining the petitioner was "not similarly situated to persons convicted of felony murder or murder under the natural and probable consequences doctrine because '[u]nlike [these murders], "[a] murder conviction under the provocative act doctrine . . . requires proof that the defendant personally harbored the mental state of malice . . . ." ' " (*Johnson*, *supra*, 57 Cal.App.5th at pp. 270–271.)

We agree with the reasoning of *Mancilla* and *Johnson* and, therefore, reject defendant's equal protection claim.

## DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

13

                                 _____

                                 Miller, J.

WE CONCUR:


_____

Stewart, P.J.


_____

Markman, J.*


A164997, *People v. Mantynen*

---

\* Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.